FILED

17 SEP 19 PM 4: 42

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: RMC  DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

September 2016 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PETER CASH DOYE (1),<br>RAQUEL REID (2),<br><br>    Defendants. | Case No. '17CR2897 WQH<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Sec. 1349 – Conspiracy to Commit Mail and Wire Fraud; Title 18, U.S.C., Sec. 1343 – Wire Fraud; Title 18, U.S.C., Sec. 1341 – Mail Fraud; Title 18, U.S.C., Sec. 1028A – Aggravated Identity Theft; Title 18, U.S.C., Sec. 2 – Aiding and Abetting; Title 18, U.S.C., Sec. 1001(a)(2) – False Statement to a Federal Agent; Title 18, U.S.C., Sec. 981(a)(1)(C), and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |

The grand jury charges, at all times material:

### INTRODUCTORY ALLEGATIONS

1.    Defendant PETER CASH DOYE ("DOYE") was a mortgage originator and lender experienced in financial markets, including the market for various types of real estate-backed loans. For example, DOYE was licensed to sell commercial and residential mortgages in several states including California. Over the course of his career in the real estate lending industry, DOYE raised at least hundreds of millions of dollars in financing for commercial real estate and other business ventures.

EWA:APY:nlv:San Diego:9/19/17

2. From at least 2011 until approximately April 2015, defendant RAQUEL REID ("REID") was a notary public appointed by the California Secretary of State. Notaries public serve as impartial witnesses to perform a variety of official fraud-deterrent acts, including screening the signers of important documents for their true identity. REID was also a licensed California real estate sales agent, and, in around early 2013, she became a licensed broker.

3. Conix, Inc. ("Conix") was a real estate investment company based in Tucson, Arizona. Conix purchased single-family homes from banks or distressed homeowners, refurbished the properties, and then re-sold them for a profit. Conix also purchased commercial real estate, and purchased performing and non-performing debt from mortgage lenders. In around 2012 or 2013, Conix expanded its commercial real estate business, and created Variant Commercial Real Estate, LLC ("Variant") to conduct that portion of his business portfolio.

4. Courtland M. Gettel (charged elsewhere) was the operator and majority shareholder of Conix and Variant.

5. Jeffrey Greenberg (charged elsewhere) was an attorney licensed to practice law in Arizona. Greenberg worked on behalf of Conix and Variant.

6. DOYE began working as a senior executive at Conix and Variant in around early 2012. Shortly thereafter, DOYE became Gettel's informal partner.

7. In around mid-2012, DOYE and Gettel relocated to San Diego, California, where they opened a second office to operate Conix and Variant. Greenberg remained in Arizona.

8. Beginning in approximately 2012, REID worked for Conix and Variant at their San Diego office as a transaction coordinator for

certain real estate deals, and as an office administrator. In around mid-2013, REID and DOYE began a romantic relationship, which continued through at least January 2016.

9. In around April 2013, Gettel purchased the home located at 2485 Calle Del Oro in La Jolla, California ("Calle Del Oro"), for approximately $4.9 million. In around May 2013, DOYE and Gettel negotiated an investment deal in which they pledged a pool of real estate assets, including Calle Del Oro, in exchange for $25 million. As part of the agreement, DOYE and Gettel promised not to use the property to secure any additional debt. The investor did not execute or record a deed of trust reflecting its investment.

10. In around July 2013, DOYE purchased the home located at 13594 Mar Scenic Drive in Del Mar, California ("Mar Scenic"), for approximately $3.45 million, which he paid for with a loan from private investment firm Javlin One, LLC ("Javlin"). As part of the agreement, DOYE promised not to use the property to secure any additional debt. Javlin did not execute or record a deed of trust reflecting its loan.

## Count 1

### Conspiracy to Commit Wire Fraud

(18 U.S.C. § 1349)

11. Paragraphs 1 through 10 are realleged and incorporated herein.

12. Beginning at least around August 2013, and continuing through at least December 2015, within the Southern District of California and elsewhere, defendants PETER CASH DOYE ("DOYE") and RAQUEL REID ("REID") knowingly and intentionally conspired and agreed with each other, Gettel, Greenberg, and others to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and mail fraud, in violation of Title 18, United States Code, Section 1341.

13. It was the purpose of the conspiracy to fraudulently obtain tens of millions of dollars from private real estate lenders by pretending that high-value luxury homes in La Jolla and Del Mar, California used as collateral for loans were debt-free, when in fact the properties were already encumbered with millions of dollars in preexisting debt, so that DOYE, REID, Gettel, and Greenberg could use the loan proceeds for their own personal benefit.

14. To execute the scheme, DOYE, REID, Gettel, and Greenberg used the following manner and means:

   a. DOYE and Gettel would promote a business plan which purported to invest in high-end properties in and around San Diego by buying and refurbishing luxury homes and then either re-selling the homes or renting the properties to vacationers. The properties they would promote as part of this business plan included Calle Del Oro and Mar Scenic as well as the La Jolla homes located at 6309 Avenida Cresta ("Avenida Cresta") and 5490 Calumet Avenue ("Calumet").

   b. To finance their acquisition of Avenida Cresta and Calumet, DOYE and Gettel would solicit millions of dollars in loans from Javlin, knowing that Javlin would not execute or record deeds of trust reflecting its loan. As part of the loan agreement, DOYE and Gettel would promise not to use the properties to secure any additional debt.

   c. DOYE and Gettel would then negotiate with a second group of real estate investors to obtain millions of dollars in additional loans secured by the same four properties, concealing from the new lenders that the properties were already encumbered with preexisting debt. This second group

of lenders included R2R Capital-Del Mar Lender, LLC ("R2R Capital"), Anchor Loans, LLC ("Anchor Loans"), and F.R. and A.R.

d. To obtain millions of dollars in further proceeds, DOYE and Gettel would repeat this process with a third group of lenders to obtain millions of dollars in additional loans secured by the same four properties, concealing from the third lenders that the properties were already encumbered with at least two prior loans. This third group of lenders included LJ 6309, LLC, CPIF California, LLC ("CPIF California," an affiliate of Columbia Pacific Income Fund), and Partners Capital 101, LLC ("Partners Capital").

e. To conceal the preexisting debt from the new lenders, DOYE, REID, Gettel, and Greenberg would provide the lenders materially false and fraudulent information and documents relating to the transactions, including false representations about the properties, fraudulent corporate records, and fabricated and forged correspondence.

f. Knowing that the second group of lenders did execute and record deeds of trust reflecting their loans, Greenberg would create materially false and fraudulent "Deeds of Full Release and Reconveyance of Deed of Trust," purporting to demonstrate to the third group of lenders that the liens had been released and the loans paid in full, when in fact the loans remained outstanding.

g. To avoid repaying the tens of millions of dollars in debts while also evading suspicion for the fraud, DOYE and Gettel would negotiate with the lenders to extend the maturity

date of their loans. As part of these negotiations, to conceal the subsequent loans and allow the scheme to continue, DOYE, REID, Gettel, and Greenberg would provide the lenders even more materially false and fraudulent information and documents relating to the transactions, including fraudulent and forged deeds purporting to demonstrate that the subsequent liens had been released and the loans paid in full, when in fact the loans remained outstanding.

h. REID and Greenberg would forge signatures and use fraudulent notary acknowledgments on the fraudulent deeds, and record the fraudulent documents at the San Diego County Recorder's Office, so that they would appear authentic and legitimate.

i. To conceal her participation in the fraud, REID would intentionally alter her true signature on these fraudulent documents, so that she could later claim that her notary acknowledgment had been forged.

j. To conceal their participation in the fraud, DOYE and Gettel would direct the fraudulently-obtained loan proceeds to bank accounts owned by corporations and LLCs, and to attorney bank accounts owned by Greenberg, before disbursing the proceeds to themselves or to others at their direction.

k. Facing questions from lenders and others suspicious of the fraud, DOYE, REID, and Gettel would falsely deny any knowledge of the fraudulent second and third loans, falsely deny that they received any of the loan proceeds, and

falsely claim that others were solely responsible for the fraudulent documents.

l. To further conceal her participation in the fraud and support her false claim that her notary acknowledgment had been forged, REID would falsely report that her notary stamp had been stolen or lost, and would destroy contradictory evidence by shredding her notary journal and cutting up her notary stamp.

15. Using this fraudulent scheme, DOYE, REID, Gettel, and Greenberg obtained the following loans, totaling approximately $48.7 million in fraudulently-obtained proceeds, by concealing from each lender the preexisting and subsequent debts, and by falsely pretending that each lender would have an exclusive interest in the following properties:

| Property | Approx. Date | Lender | Approx. loan amount |
|---|---|---|---|
| Mar Scenic | 8/29/2013 | R2R Capital | $3,000,000 |
| Calle Del Oro | 10/31/2013 | Anchor Loans | $3,600,000 |
| Avenida Cresta & Calumet | 3/28/2014 | Javlin | $15,159,000 |
| Avenida Cresta | 4/1/2014 | F.R. & A.R. | $3,000,000 |
| Calumet | 4/14/2014 | Anchor Loans | $4,625,000 |
| Avenida Cresta | 5/7/2014 | LJ 6309, LLC | $4,000,000 |
| Calumet | 6/3/2014 | CPIF California | $9,818,000 |
| Calle Del Oro | 7/15/2014 | CPIF California | $3,089,000 |
| Mar Scenic | 10/9/2014 | Partner's Capital | $2,464,000 |
| | | Total: | **$48,755,000** |

All in violation of Title 18, United States Code, Section 1349.

## Counts 2 - 6

### Wire Fraud

(18 U.S.C. § 1343)

16. Paragraphs 1 through 10 are realleged and incorporated herein.

17. Beginning no later than August 2013, and continuing up to and through at least December 2015, within the Southern District of California and elsewhere, defendants PETER CASH DOYE and RAQUEL REID knowingly and with the intent to defraud, devised a material scheme to defraud lenders and to obtain their money and property by materially false and fraudulent pretenses, representations, and promises.

18. The scheme to defraud is more fully described in Paragraphs 13 through 15, which are realleged and incorporated herein.

### Execution of Scheme by Wire Communications

19. For the purpose of executing the above-described scheme, on or about the following dates, within the Southern District of California and elsewhere, defendants PETER CASH DOYE and RAQUEL REID, as specified for each count listed below, caused to be transmitted by wire communication in interstate commerce the following signals and sounds in the form of transfers of funds:

| Count | Defendant | Approx. Date | Sender/ Sending Bank | Recipient/ Receiving Bank | Approx. amount of transfer |
|---|---|---|---|---|---|
| 2 | PETER CASH DOYE | 9/3/2013 | R2R Capital/ Ticor Title/ US Bank | Corinthian Title Company/City National Bank | $2,969,675 |
| 3 | PETER CASH DOYE | 3/28/2014 | Javlin/BMO Harris Bank | Landmark Title Assurance Agency/Compass Bank | $14,370,668 |

| Count | Defendant | Approx. Date | Sender/ Sending Bank | Recipient/ Receiving Bank | Approx. amount of transfer |
|---|---|---|---|---|---|
| 4 | PETER CASH DOYE | 4/2/2014 | F. & A. Ragen/David J Ruyle/Chase Manhattan Bank | Elite Escrow Services of San Diego/City National Bank | $3,000,000 |
| 5 | PETER CASH DOYE and RAQUEL REID | 5/8/2014 | LJ 6309, LLC/ Timberline Fund LP/ CoBiz Bank | Stewart Title of California/Union Bank | $4,000,000 |
| 6 | PETER CASH DOYE | 10/9/2014 | Partners Capital/ Copper Beech Holdings LLC/ US Bank | Stewart Title of California/Union Bank | $2,464,000 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

### Counts 7 - 9

### Mail Fraud

(18 U.S.C. § 1341)

20. Paragraphs 1 through 10 are realleged and incorporated herein.

21. Beginning no later than August 2013, and continuing up to and through at least December 2015, within the Southern District of California and elsewhere, defendants PETER CASH DOYE and RAQUEL REID knowingly and with the intent to defraud, devised a material scheme to defraud lenders and to obtain their money and property by materially false and fraudulent pretenses, representations, and promises.

22. The scheme to defraud is more fully described in Paragraphs 13 through 15, which are realleged and incorporated herein.

### Execution of Scheme by Mail

23. For the purpose of executing the above-described scheme, on or about the following dates, within the Southern District of California and elsewhere, defendants PETER CASH DOYE and RAQUEL REID, as specified

for each count listed below, caused to be placed in a United States post office and other authorized depository for mail matter, items to be sent and delivered by the United States Postal Service according to the directions thereon, as set forth below:

| Count | Defendant | Approx. Date | Sender | Recipient | Item |
|---|---|---|---|---|---|
| 7 | PETER CASH DOYE | 5/23/2014 | San Diego County Recorder | 13594 Mar Scenic Drive, LLC, 750 B Street, San Diego, CA | "Deed of Full Release" of R2R Capital loan, Doc # 2014-0191335 |
| 8 | PETER CASH DOYE and RAQUEL REID | 10/17/2014 | San Diego County Recorder | 6309 Avenida Cresta, LLC, 6309 Avenida Cresta, La Jolla, CA | "Deed of Full Release" of LJ 6309 LLC loan, Doc # 2014-0432836 |
| 9 | PETER CASH DOYE and RAQUEL REID | 10/17/2014 | San Diego County Recorder | 5490 Calumet, LLC, 750 B Street, Suite 1820, San Diego, CA | "Deed of Full Release" of CPIF California loan, Doc # 2014-0432837 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

### Count 10

### Aggravated Identity Theft

(18 U.S.C. § 1028A)

24. Paragraphs 1 through 10 and 13 through 15 are realleged and incorporated herein.

25. On or about October 6, 2014, within the Southern District of California and elsewhere, during and in relation to a felony violation of Title 18, United States Code, Section 1341 (Mail Fraud), and a felony violation of Title 18, United States Code, Section 1349 (Conspiracy), defendants PETER CASH DOYE and RAQUEL REID knowingly transferred,

10

possessed, and used, without lawful authority, a means of identification of another person, to wit, the signature of R.M. on a fraudulent Substitution of Trustee and Deed of Full Release and Reconveyance of Deed of Trust form purportedly executed by lender LJ 6309, LLC to release a $4 million lien against real property, filed at the San Diego County Recorder's Office as document number 2014-0432836, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Sections 1028A and 2.

### Count 11

### Aggravated Identity Theft

(18 U.S.C. § 1028A)

26. Paragraphs 1 through 8 and 13 through 15 are realleged and incorporated herein.

27. On or about October 6, 2014, within the Southern District of California and elsewhere, during and in relation to a felony violation of Title 18, United States Code, Section 1341 (Mail Fraud), and a felony violation of Title 18, United States Code, Section 1349 (Conspiracy), defendants PETER CASH DOYE and RAQUEL REID knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, to wit, the signature of A.W. on a fraudulent Substitution of Trustee and Deed of Full Release and Reconveyance of Deed of Trust form purportedly executed by lender CPIF California, LLC, to release an approximately $9.8 million lien against real property, filed at the San Diego County Recorder's Office as document number 2014-0432837, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Sections 1028A and 2.

### Count 12

### False Statement to a Federal Officer

(18 U.S.C. § 1001(a)(2))

28. Paragraphs 1 through 8 and 13 through 15 are realleged and incorporated herein.

29. On around December 15, 2015, within the Southern District of California, defendant RAQUEL REID, in a matter within the jurisdiction of the executive branch of the government of the United States, that is, the Federal Bureau of Investigation ("FBI"), did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations, by falsely stating to agents of the FBI that a forged and fraudulent "Deed of Full Release" purportedly signed by A.W. and filed at the San Diego County Recorder's office did not bear her signature and that she did not know who had signed the notary acknowledgment with her name. These statements and representations were false because, as REID then knew, she herself had signed the notary acknowledgment and stamped the document with her notary stamp.
All in violation of Title 18, United States Code, Section 1001(a)(2).

### FORFEITURE ALLEGATIONS

30. The allegations contained in paragraphs 1 through 8 and 11 through 13, and Counts 1 through 9 of this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

31. Upon conviction of one or more of the offenses set forth in Counts 1 through 9, defendants PETER CASH DOYE and RAQUEL REID shall forfeit to the United States any property, real and personal, constituting or derived from proceeds traceable to such offenses. The

property to be forfeited shall include but is not limited to, a money judgment in favor of the United States of approximately $48.7 million, representing the total amount of proceeds obtained directly or indirectly as a result of the offenses.

32. Pursuant to Title 28, United States Code, Section 2461(c) which incorporates the provisions of Title 21, United States Code, Section 853(p), the defendants shall forfeit substitute property, up to the value of the amounts described above, if, as a result of any act or omission of the defendants, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of this court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

DATED: September 19, 2017.

A TRUE BILL:

_____
Foreperson

ALANA W. ROBINSON
Acting United States Attorney

By: _____
EMILY W. ALLEN
Assistant U.S. Attorney

By: _____
ANDREW P. YOUNG
Assistant U.S. Attorney